IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| ALVIN POE,<br>PLAINTIFF,<br><br>V.<br><br>AT&T INC.; AT&T MOBILITY LLC; AT&T SERVICES, INC.<br>DEFENDANT(S). | CIVIL ACTION<br>FILE NO. |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

**INTRODUCTION**

1. This action arises from disability discrimination, failure to provide reasonable accommodation, and sex discrimination allegedly committed by Defendant AT&T Inc. ("AT&T") against Plaintiff Alvin Poe ("Plaintiff" or "Mr. Poe") during his employment in Atlanta, Georgia.

2. Mr. Poe is a male United States Marine Corps veteran diagnosed with post-traumatic stress disorder ("PTSD"). He disclosed his disability and requested assistance while experiencing anxiety and depression related to repeated workplace harassment.

3. AT&T management allegedly minimized his complaints based on stereotypes that a man should tolerate mistreatment by a woman, while other personnel suggested he could become violent because of his PTSD and military service.

4. AT&T terminated Mr. Poe on June 5, 2026, shortly after he submitted an internal ethics complaint, citing an alleged threat that he denies making.

5. Plaintiff seeks relief under the Americans with Disabilities Act of 1990, as amended ("ADA"), 42 U.S.C. § 12101 et seq., and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq.

**JURISDICTION AND VENUE**

6. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 and jurisdiction over claims under Title VII and the ADA pursuant to 42 U.S.C. § 2000e-5(f)(3) and 42 U.S.C. § 12117(a).

7. Venue is proper in the Northern District of Georgia because Plaintiff worked at AT&T's Atlanta facility and the alleged unlawful employment practices occurred in this District. See 42 U.S.C. § 2000e-5(f)(3).

8. Plaintiff timely filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), assigned Charge No. 410-2026-14190, alleging unlawful discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act ("ADA"). On September 24, 2026, the EEOC issued Plaintiff a Notice of Right to Sue. Plaintiff has therefore exhausted his administrative remedies and satisfied all conditions precedent to bringing this action.

**PARTIES**

9. Plaintiff Alvin Poe is an individual who worked in Atlanta, Georgia, and is a man and a disabled Marine Corps veteran. His is a resident of Georgia.

10. Defendant AT&T Inc. is identified by Plaintiff as his employer.

11. At all relevant times Defendant controlled Plaintiff's training, supervision, and termination and is a covered employer under the ADA and Title VII.

**FACTUAL ALLEGATIONS**

**A. Employment and Training**

12. AT&T previously employed Mr. Poe approximately from February or March 2014 until spring 2016 as a home-solutions sales representative in Conyers, Georgia.

13. AT&T rehired Mr. Poe in 2026. He began work on May 11, 2026, as a CLG representative at AT&T's Peachtree location in Atlanta, Georgia, with base pay of approximately $746 weekly plus potential commission.

14. The training program was expected to include classroom instruction and supervised customer calls. Rena Carter ("Rena") served as Plaintiff's trainer; Michael ("Mike") and Robert were training managers.

15. Mr. Poe was qualified to perform the essential duties of the call-center sales and customer-service position, with or without reasonable accommodation.

**B. Trainer's Conduct and Gender-Based Remarks**

16. On the first day of training, Rena announced that she spoke harshly to people and trainees would need to get used to it.

17. When Mr. Poe and another older trainee sought clarification of slang-based instructions, Rena mocked their age and told them to keep up with the times.

18. Rena repeatedly interrupted, ridiculed, and reprimanded Mr. Poe in front of the training class, including when he attempted to help another trainee understand the material.

19. Rena told Mr. Poe that he was a man and should not let a woman make him angry; when he asked her to stop, she mocked his feelings.

20. Rena moved Mr. Poe's seat to the back of the room, stood over him, invaded his personal space, and, according to Mr. Poe, lunged toward him with a clenched fist as though she intended to strike him.

21. Mr. Poe requested that Rena stop insulting him and respect his physical boundaries. Rena also invoked stereotypes that Marines should be tough and that he should "be a man."

22. During subsequent training sessions, Rena allegedly continued to yell at Mr. Poe and discourage him from helping trainees, while also touching him and attempting hugs that he declined.

**C. Reports to Management and Disclosure of PTSD**

23. On or about May 19, 2026, Mr. Poe went to report Rena's conduct. After he exited an elevator, Human Resources employee Crystal noticed his distress; hiring coordinator Tanisha Thompson approached him and said she already knew what was happening.

24. Thompson took Mr. Poe to her office, acknowledged that he was being bullied, and allegedly told him that because he was a man and Rena was a woman he should tolerate her conduct.

25. Mr. Poe asked whether AT&T would discipline him if he spoke to Rena the same way; Thompson allegedly said yes and invoked his sex as the reason.

26. In discussing whether management was waiting for him to react by cursing at or slapping Rena, Mr. Poe posed a hypothetical question. Thompson characterized that question as a threat. Mr. Poe denied making any threat.

27. During that discussion, Mr. Poe disclosed his diagnosed PTSD, anxiety attacks, depressive symptoms, and need to continue counseling, and asked for Employee Assistance Program ("EAP") information.

28. Mr. Poe explained that Rena's behavior aggravated his PTSD-related symptoms and asked management to stop the harassment and permit him to maintain boundaries at work.

29. Thompson allegedly minimized these concerns, told him to act like a man, and did not initiate a documented interactive accommodation process.

30. Mr. Poe obtained EAP contact information from a training manager and sought counseling through Cognitive Healing of Atlanta LLC.

31. Thompson spoke to Rena and then advised Mr. Poe that Rena meant no harm and that this was simply how she behaved. Rena subsequently made a remark to the class about "snitches get stitches," according to Mr. Poe.

32. Despite his complaints, the harassment and interference with training continued.

**D. Formal Complaint, Disability Stereotypes, and Termination**

33. On June 5, 2026, after Rena again reprimanded Mr. Poe in front of trainees, he went to Thompson's office to request a formal Human Resources complaint and union representation.

34. Supervisor Yasmin directed Mr. Poe away from the formal HR complaint process and instructed another supervisor to show him AT&T's Speak Up ethics-reporting system.

35. The supervisor who directed him to Speak Up allegedly stated repeatedly that she was concerned he might become violent because he was a Marine with PTSD, although Mr. Poe denied violent intent or conduct.

36. Mr. Poe explained that his options were to quit, ignore the conduct, or report it. The supervisor raised the hypothetical possibility of physical assault; Mr. Poe rejected that suggestion.

37. At approximately 6:00 p.m. on June 5, 2026, Mr. Poe submitted a Speak Up complaint documenting the harassment and management's response. He later made a telephone report after his termination.

38. Shortly after the online complaint, management removed Mr. Poe from the training floor. At approximately 6:45 p.m., Mike informed him that AT&T was terminating his employment effective immediately because of an alleged threat against Rena.

39. Mr. Poe denies threatening to slap, strike, assault, or harm Rena or any other employee. He alleges that he was not told the specific words purportedly constituting the threat and was not afforded a meaningful opportunity to respond.

40. AT&T had previously allowed Mr. Poe to continue working with Rena without restriction after Thompson initially characterized his hypothetical question as a threat.

41. Mr. Poe alleges that the stated threat rationale was false or pretextual and that disability-based assumptions and sex-based stereotypes influenced the decision to terminate him.

**E. Union Grievance and Harm**

42. After his termination, Mr. Poe pursued a grievance through Communications Workers of America Local 3204. A grievance meeting occurred on or about June 30, 2026.

43. During the grievance process, Thompson allegedly emphasized that Mr. Poe was male and Rena female, asserted that an alleged threat was more serious for that reason, and acknowledged that Rena had not known of a purported threat.

44. Thompson allegedly characterized a separate conciliatory conversation with Rena as an apology for threatening her. Mr. Poe denies any such admission; he says he sought to restore a professional relationship and clarified a misunderstanding concerning training information.

45. A union representative recommended that Mr. Poe be rehired, but AT&T declined, according to Mr. Poe.

46. As a result of the alleged discrimination, Mr. Poe has suffered lost wages and benefits, emotional distress, humiliation, anxiety, and reputational harm. He alleges difficulties paying rent and utilities following his termination.

## CLAIMS FOR RELIEF

### COUNT I — Disability Discrimination (ADA, 42 U.S.C. § 12112(a))

47. Plaintiff realleges the preceding paragraphs as though fully set forth herein.

48. Plaintiff has PTSD, a mental impairment that substantially limits one or more major life activities, including concentrating and regulating emotional and neurological functioning, as alleged; alternatively, Defendant regarded him as impaired.

49. Plaintiff was qualified for his position and able to perform its essential functions with or without reasonable accommodation.

50. Defendant knew of Plaintiff's disability and, through its personnel, allegedly relied upon stereotypes associating PTSD and military service with workplace violence.

51. Defendant subjected Plaintiff to adverse employment action, including termination, because of his actual or perceived disability, in violation of the ADA.

52. Plaintiff suffered economic and noneconomic injury as a result of Defendant's conduct.

**COUNT II — Failure to Provide Reasonable Accommodation (ADA, 42 U.S.C. § 12112(b)(5)(A))**

53. Plaintiff realleges the preceding paragraphs as though fully set forth herein.

54. Plaintiff had a known disability and disclosed PTSD-related anxiety and depression to management while requesting EAP assistance, counseling access, intervention regarding conduct exacerbating his symptoms, and workable boundaries in training.

55. Plaintiff alleges that, in context, his communications put Defendant on notice that disability-related workplace assistance was needed and warranted a good-faith interactive discussion to identify an effective, reasonable accommodation.

56. Potential accommodations could have included access to counseling-related scheduling flexibility, a temporary change in trainer or training arrangements, or other effective adjustments, subject to proof of reasonableness and necessity. Plaintiff does not contend

that the ADA necessarily requires an employer to eliminate ordinary interpersonal conflict.

57. Defendant allegedly failed to engage in a meaningful interactive process and failed to provide an available effective reasonable accommodation, causing injury.

## COUNT III — Sex Discrimination and Disparate Treatment (Title VII, 42 U.S.C. § 2000e-2(a)(1))

58. Plaintiff realleges the preceding paragraphs as though fully set forth herein.

59. Plaintiff is male and was qualified for the position he held.

60. Management allegedly stated repeatedly that Plaintiff should tolerate abusive conduct because he was a man and his trainer was a woman, while stating that comparable conduct by Plaintiff toward Rena would result in discipline.

61. When assessing the alleged threat, Thompson allegedly stressed that a male employee's purported threat against a female employee was especially serious because of their sexes.

62. Defendant minimized Plaintiff's complaints, credited an unsubstantiated accusation against him, and terminated him. Plaintiff alleges his sex was a motivating factor in this treatment and termination.

63. Defendant's actions caused Plaintiff loss of wages, benefits, and other compensable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter judgment in Plaintiff's favor on all counts established by the evidence;

B. Award back pay, lost benefits, prejudgment interest, and other appropriate make-whole relief;

C. Award reinstatement or, if reinstatement is not feasible, front pay as authorized by law;

D. Award compensatory damages for emotional distress and other legally cognizable losses, subject to applicable statutory limits;

E. Award punitive damages to the extent permitted by law and supported by proof of the requisite state of mind;

F. Award reasonable attorney's fees and costs to the extent authorized by 42 U.S.C. §§ 2000e-5(k) and 12205;

G. Order appropriate equitable relief, including correction of personnel records and nondiscriminatory consideration for rehire where legally warranted; and

H. Grant such other relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted this 2ND day of November 2026.

By: *<u>/s/ Muta Mashack, Esq.</u>*
Muta Mashack, Esq.
Mashack Law
30 N Gould St Ste R, Sheridan, WY 82801
BPA Employment Law Inc.
(404) 947-2452
Georgia Bar No. 218700

Counsel for Plaintiff